Number 162401 Lori Franchina v. City of Providence Good morning, Your Honor. Kevin McHugh on behalf of the appellant, City of Providence. Your Honor, may I have two minutes reserved for rebuttal? Yes. Your Honor, we're asking the court to reverse the judgment below and enter judgment for the defendant, or in the alternative to remand this case for a new trial, or in the alternative to strike the front pay award. And I'd like to concentrate on three of the issues that we've raised in our appeal. The first one being the sufficiency of the evidence on the sex plus count. The second being the instruction that was given on the sex plus count. And the third one being the award of the front pay. And on the sex plus count in our motion for judgment as a matter of law, we questioned the sufficiency of the evidence that the plaintiff put forward to prove her sex plus count. And the reason we did that was there was no corresponding subclass that they presented of males to differentiate the genders in this case, per Chadwick, for instance. And so what we had was the plaintiff alleging that she was harassed. Well, the case was submitted to the jury on a gender discrimination claim. It was submitted to the jury on that whole sex plus claim, Your Honor, which they needed gender plus the subclass of males. But, yeah, it went to the jury on both, actually. And that's the way they tried the case. But they're doing the same thing. They're just saying, can we establish the causal relationship between her gender and the act said to be discriminatory? And the plus is just a particular context in which you do that. Correct. But the way you do that, Your Honor, is you need that corresponding subclass of the opposite gender to prove that. Why? That's what the cases say, Your Honor. And if you look at those last two District of New Hampshire cases, I think the Frederick case and the Rathallion case, I think it is, talk about the necessity of having another subclass of another gender in order to prove gender. But it went to the jury on a gender claim of discrimination. The court was instructed that the discrimination had to at least be in part based upon her gender, not her gender and her sexual orientation. So the jury had to conclude that it was based in part on gender, period. In part, it had to conclude that. But if you look at the instruction that was given, which is in our addendum to pages 22 and 25, the court said she has to prove she was harassed because she was part of a subclass of women, in this case lesbians. She also proved that this harassment was at least in part because of her sex or gender. In part. Right. And so that instruction was misleading because I'm sure someone sitting on the jury could sit there and say, well, all lesbians are female and so she was discriminated against or harassed because she's a lesbian and she must have been harassed or discriminated against because she's a woman. What about the instruction that the jury should consider whether she would have been harassed if she had been a man? Well, it doesn't say it exactly that way. And I'm glad you brought that up because I'm not sure what this means. Whether or not it would have been harassed if she had been a man but everything else had been the same. I don't know what that means, everything else had been the same. It means if she had been a man, would she have been harassed? But the other part of that is, had everything else been the same? Are you saying the man was a lesbian? Well, no, that couldn't be. So wouldn't the jury be kind of reasonable about that? Did you object to the clause that being misleading, everything else had been the same? We objected to that instruction and asked that... Right, but did you say the jury might think that they should think of a man who was a lesbian, which seems kind of unreasonable. We didn't specifically say that they would think of a man as a lesbian. So what's confusing about it, isn't it just saying that if you had the mirror situation with a man and they wouldn't have done what they did, then you've got gender discrimination. And then there are situations involving a man who was gay, for example. Well, first of all, it couldn't be just a man in this case. It would have to be a gay male firefighter because you would need that subclass to differentiate the two things. The common denominator would be their sexual orientation. And what sets that apart then would be the male versus the female. In the Frederick case, you have two subclasses of women, which was not cognizable as a cause of action. It's the same thing here. So what I'm saying, Your Honor, is on this, if our instruction had been given that if she proved, which we had asked for, that if she proved she was harassed solely because she was a lesbian, then that was not enough, then the jury would have had a qualifier. But they didn't have a qualifier. And it wasn't fair to the defendant that the jury had to guess over this. And I think that instruction is a major error that we may have had a different result had the one we asked for been included. If the jury had been told, you can't just rely on her sexual orientation. You've got to set it apart and show that men, not that they would have been harassed if they were men, but would have been harassed if they were a gay man because that's the thing that sets it apart. That's the only thing that's going to set apart the female and the male in this case, the subset. And we didn't have it and didn't go into evidence. There wasn't any discussion on it. The jury had common sense, and one of the allegations are, as I understand it, is there was suggestion or the jury could have found that some of the men treated her unfavorably because they wouldn't engage in sex with her. One of them offered to engage in sex with her. Couldn't the jury, by rational, listening to that testimony, that witness, appraising that witness, have said he was not going to discriminate against a man who wouldn't have sex with him? No. Or who would have sex with him? No, and the reason is because there was no evidence that any of those males were gay, and that would have been the correct subclass. Well, you don't have to have an actual instance in order to find discriminatory intent in which you could have one African American employed in a situation and find discrimination going one way even though there was no white who was let go or had the same offense. You could just infer a different treatment. Right, disparate treatment, and this is a disparate treatment case. Was the plaintiff treated differently because she was a lesbian and a woman different than a male firefighter who was gay? You've got to have that qualifier. But the court instruction didn't limit it like that. The court instructed she may meet this element by proving that she was harassed because she is part of a lesbian, part of a subclass of women, in this case lesbian, if she also proves that this harassment was at least in part because of her sex or gender. So the court made it clear. I don't, with all due respect, Your Honor, I don't see that instruction being that clear for the reasons I already talked about. The way the evidence went in, there was no evidence of any gay male firefighters, and since all lesbians are female, it's easier to make that step and say, well, she was harassed because she's a lesbian, so she must have been harassed because she's a female. There was evidence of other women being harassed. You disagree with that? Evidence of other women being harassed? Are you talking about the one other female firefighter who's a lesbian? That's the one you're talking about, correct? Yes. Yes. And there was also evidence of gender intent based upon what they were saying to her. But, Your Honor, that still leaves out of the equation the corresponding class. Now, there were women who, female firefighters who we put on the stand, who were not harassed, and they seemed... But the jury's job is to determine if this particular person was harassed because of gender. And because she belongs to that subclass as a lesbian. You need both. Well, let me ask you this. Yes. Suppose you have a fire department, there are no gay men in the department, 20 employees, no gay men. Are you saying that in that circumstance, the fire department could discriminate against a gay woman, a lesbian woman, because she would be unable to produce what you say she has to produce, which is a subclass of gay men who are not being discriminated against? Well... So as long as there are no gay men, it's open game, open field? No, I'm not saying that at all. Well, how would, then, take a situation where you have no gay men, you have one lesbian woman, and there's a discrimination against her on the grounds that she is a lesbian woman. How would that person possibly prove that discrimination? And they're not discriminating against straight women. She's not going to be able to prove it without that subclass of people. So, in other words, they can discriminate against her all they want. That's what I'm saying, I think. That's the logical... I'm not saying they can discriminate against... Then how would she prove it? Well, they chose to try the case on a sex-plus issue. They could have tried the case differently. And suppose it was really sex-plus discrimination? Well, they could have tried the case differently. Stay with my hypothetical. Suppose you have a sex-plus discrimination case. I think you're saying a necessary element of that is proving actual discrimination against a subclass of gay men. So it would therefore follow, if that's correct, that if there are no gay men, the gay woman could never prove her case. That's possible, as in the Frederick case. Well, that sounds kind of odd. I mean, the chief could come in and say, I've just determined there are no gay men in this, so any gay women, you're fired because I don't like women who are gay. And you're saying that would be the end of it. She couldn't do anything. But if a woman is gay and chooses to file a case based on harassment just on her gender and leave out her sexual orientation, she could still potentially prove that she was harassed because she's a woman. So in that example, the woman would sue and say, I know you're against gays, but I know you're really against women gays. And if there were male gays here, you wouldn't fire them. But there aren't any here. And so you would then say, no subclass, she loses. Well, unless she decided to put in the case in a different way, yes. Or a sex-based stereotype. One of the other things they didn't put in, in addition to the subclass, was a sex-based stereotype, such as was done in Chadwick. Have they tried the case and tried to put in a sex-based stereotype? I don't know. Have we had the same result? I'm not sure. We cited cases from the second, third, fifth, sixth, eighth, and tenth circuits. All the circuits are saying, if you're going to have one of these cases, given the fact that sexual orientation is not protected under Title VII, and you're going to have a sex-plus case, then you've got to have the corresponding subclass of the opposite gender in order to prove your case, to show the disparate treatment. So, yes, Judge Kayaba, if there's no gay male firefighters under this theory, then your argument is correct. You can't prove a case of sex-plus using a corresponding subclass if there is no subclass, as in Frederick. But you can prove if you're using a sex-based stereotype. But they didn't choose to try the case that way. They chose to try the case as a sex-plus and concentrate on the sexual orientation of the plaintiff. So I think, together with the lore on that and the insufficiency of the evidence in the instruction, and leaving out our instruction, I think that was deadly to the city. I also wanted to get into the front pay. I think the front pay, there was insufficient evidence whether it went before the jury. It shouldn't have gone before the jury. It should have gone to the judge. Whether it went before the jury or it went to the judge, there was insufficient evidence for it to go to anybody on the front pay issue. Thank you, Your Honor. Good morning, Your Honors. My name is John Martin. I'm here on behalf of Lori Franchina with my colleague Kathy Jo Cook. And Ms. Franchina is in the background. I have three points for you this morning. First is that Ms. Franchina did present sufficient evidence to preserve the statute of limitations or that an event occurred within the statute of limitations. Second, that Ms. Franchina presented sufficient evidence for a verdict based on sexual harassment to this jury. And third, that there was no requirement or there was no error in the equitable award of front pay. First, in regards to the statute of limitations, the magic number or the magic date was February 3rd because the filing date was November 30th. That's about a month and three days into the year. Ms. Franchina testified that she continued to go to the station and continued to have harassing events, including being called a bitch, being called the C-word, being called Frangina, for a good portion of the year. And as the judge pointed out when he denied the motion for a new trial, one could infer that a good portion of the 12-month year is more than one month. Second on that, I'd like to point out that under the Reeves v. Sanders plumbing case, Ms. Franchina was entitled to all reasonable inferences in her favor. And under Mercado v. Ritz-Carlton, the statute of limitations is actually an affirmative defense for which the city bared the burden of proof. We brought forth a claim of hostile work environment, and our burden was to set forth an event that entitled us to the benefit of the continuing violation. But if the city wanted to prevail on the statute of limitations, they could have and should have put the special question to the jury, and they could have and should have put on evidence and convinced the jury otherwise. There was no question put to the jury. They waived their right to a trial on that issue, and the judge was correct that it was a reasonable inference to be drawn in her favor. So the verdict should stand on that issue. Second, with regards to the gender plus issue, it seems as if the city claims or has argued that Ms. Franchina found a way to backdoor in sexual orientation and to Title VII protection. I think that's a fair reading. But the jury verdict form found at page 37 of their addendum only asked the jury two questions, whether she prevailed on the claim of hostile work environment and whether she prevailed on a claim of retaliation. So the issue is not whether or not she presented appropriate comparators. No comparators are necessary in a hostile work environment claim. The six elements of a hostile work environment essentially are that she was harassed and that she found it personally unpleasant enough to be actionable, and that an objective person would find it unpleasant enough to be actionable, and that it be based in part at least on her gender, in part at least on her gender. In that respect, the jury instruction was absolutely appropriate. But the requested jury instruction from the city was not. And even if the city did find a more articulate way to present the issue, that still wouldn't entitle them to a new trial. What was wrong with their instruction? Their instruction was if you find that she was discriminated against solely because of her gender, that you have not found out she was discriminated against because of her gender. And in this case, there was a series of events that culminated in a hostile work environment, some of which were related to her gender, and some of which were related to her orientation. Specifically, out of all the events, there was a whiteboard in which she was called a lesbo, and there were two different incidents in an investigation with an EEOC officer in which different chiefs said, she's definitely getting treated different than the other women, we'll have to find out if that's because there's a lesbian. Now, on that third prong, the city presented a defensive intent. They said that she wasn't harassed. They never, by the way, denied that she was harassed. No one denied that she was called a bitch. No one denied that she was called the c-word. No one denied that she was called frangina. In fact, witnesses they put on corroborated those things. What they said was that she was harassed for reasons other than gender, one of them being that she was a lesbian. So it was perfectly appropriate for the judge to instruct them, for the trial court to instruct them, that if it was in part because of gender, and in part because of another reason, it's still gender discrimination. That's not new law. That's black letter. As far as the issue on the front pay award, there are a number of cases, my brothers, excuse me, that the city cites in which expert testimony was required and the jury must be instructed on front pay versus present value, excuse me, future versus present value, and there are three important points there. Number one, that is not preserved. There was never an objection to whether or not the jury was going to answer the question or be instructed as regards to future versus present value. The only objection made was that it shouldn't be presented to the jury at all because of the lack of an expert. So because it wasn't preserved, it has to be dealt with under the plain error standard, which this court has said will be reserved for when those cases, when the judge has shown a serious lack of judgment. In this case, the judge showed no judgment because nobody presented the request. Secondly, all of the cases that the city cites are under the Federal Employer's Liability Act. That's a tort statute that sidesteps sovereign immunity, and it's a statute that specifically instructs or constructs the claim to account for what they refer to as front pay, more akin to, in Massachusetts, what we would call loss of future earnings capacity. It's about are they disabled, are they capable of working, are they not capable of working. Those are all jury matters. In Title VII, there are no comparable cases. There are certainly no cases that come up with the same rule of law that the jury must be instructed and for clear reason. It's an equitable remedy to be fashioned by the judge. And in this case, number one, the jury came up with a number that the judge found to be reasonable, and number two, when he denied the motion for judgment as a matter of law, he himself fashioned an equitable remedy in the same amount. So even if this court were to consider... If it's an equitable remedy to be fashioned by the judge, was it appropriate to submit it to the jury in the first place? I think that it was, Your Honor, for a number of reasons. I think that a judge is always, or the court is always free to ask the jury for an advisory opinion, and the jury doesn't need to be advised of that. And number two, when this issue was litigated post-trial, we brought this court's decision in Travers to the court's attention and said that this may be a similar situation in which this is going to be remanded back for another hearing on damages. And I think that the court, sensing that this may be similar to the Travers case, held that hearing right there and now to save the need for another damages hearing and to save the need for another proceeding. It was similar to the last Travers decision. It was then a question about the sufficiency of the evidence. So explain to us what the evidence is that the jury or the judge could have reasonably relied upon without speculation to come out with the figure. Sure. It was almost the exact same evidence. Ms. Franchina testified to her age, the mandatory age of retirement, the fact that she planned on continuing to work for 19 years, and she testified regarding her salary. And we, just like the Travers attorney, asked for a full 19 years' worth of salary. However, we were far less effective and got an award that was the equivalent of about three and a half years. It seems to me as where this court found that 20 years was too speculative and in a similar case found that 15 years was too speculative and another case found that eight years was not. I think that the equivalency of three and a half years should not be considered too speculative, especially when using the absolutely standard and normal equations for determining present versus future value. If you use the most conservative numbers, the reduction is nothing compared to how little the jury gave us in comparison to what we actually asked for. So I don't think that this could be the type of verdict that's too speculative or so large as to be inordinate or unjust to the city. So you asked the jury for 19 years? Yes, ma'am. Yes, Your Honor. If there's nothing further. Your Honor, our lengthy objection to the front pay instruction is on page 17 of the addendum and I started off by saying it shouldn't even go to the jury because it's an equitable remedy that the court should deal with that and not the jury. But a court can always ask, if it's an equitable remedy, the court can always ask the jury to take a shot at it and it might help the court. Well, in this case, he did give it to the jury, even though there was insufficient evidence. But then he gave the same figure, so how does it help you? Why do we need to even decide if it's equitable or not? Because if there was insufficient evidence for the jury to make that determination, then it was insufficient for the judge too. Correct. So we don't need to decide whether it was equitable or not. Well, the award should be stricken then. Under either case, you're saying? Right. So now you get to the sufficiency of the evidence, and I think he's saying someone testified that her gross wages were between something like $90,000 and $130,000 and she'd worked for a long time. People often stayed in that job for a long time. She was disabled, so she could no longer work. So her loss going forward in the future was roughly $100,000 a year and she would have worked 19 years. They got pretty ambitious on the plaintiff's side and you convinced them it was only four or five years, so she got $500,000. What's wrong with that? Well, there was no instruction on how to reduce it to present value either. So what? Because they're estimating it's the number of years anyhow, and being off by six months in the year here could swap any present value determination. There was no evidence of what a rescue lieutenant would make in the future for her future wages. Well, the jury could reasonably assume with a unionized position in Rhode Island it wasn't going to be less, couldn't it? Well. Well, maybe not. Well, we've got another case coming today. The point is there was an awful lot of guessing going on with that jury. They didn't have enough evidence, and then all the judge did at the end was said based on the record that he agreed with them. There was no reduction of present value. Well, they knew what her current salary was, and assuming that they didn't give her any raises over those years, I mean, it was well within bounds, wasn't it? Well, they knew what her salary was up until she left the job in 2013. That was for the back pay, but they didn't know what the salary would be going forward for the front pay. You're saying it's unreasonable for a jury to just take the operating assumption in the absence of contrary evidence that her pay would probably have been the same? At least the same. No, there should have been evidence presented as what the salaries were for a rescue lieutenant going forward for them to make the correct decision. Well, how would they know that? How would anyone? Contracts. Huge contracts. We tried the case in 2016, so the contracts, the collective bargaining contracts in existence those years could have at least taken you up that far, and there's still the problem of reducing the present value. I think that's a huge problem in the front pay award, whether it's the jury or whether it's the judge, and for that reason alone, it should be stricken. Now, there were a couple of other things that I plan to send back. I think your time is up, unfortunately. Thank you, Your Honor. I'd ask that the case be, judgment be reversed below the judgment of the defendant. Thank you, Your Honor. Thank you.